JERRY AND EDNA HALL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hall v. Commissioner
Docket No. 18862-91
United States Tax Court
T.C. Memo 1993-198; 1993 Tax Ct. Memo LEXIS 201; 65 T.C.M. (CCH) 2575; May 6, 1993, Filed *201 Decision will be entered under Rule 155. Jerry Hall, pro se. For respondent: Mark J. Miller. DAWSON
DAWSON
MEMORANDUM OPINION DAWSON, Judge: This case has been assigned to Special Trial Judge Marvin F. Peterson pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The Court agrees with and adopts the Special Trial Judge's opinion, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(1)(A) 1986
$ 1,338
$ 335
--
$ 140
1987
12,890
3,112
--
645
1988
7,814
1,795
391
--
1989
4,361
145
--
--
Additions to Tax Sec.
Sec.
Sec. Sec. Year
6653(a)(1)(B)
6654(a)
6662 6661 1986
50% of the
$ 47
--
--
interest due
on $ 1,338
1987
50% of the
--
--
$ 2,075
interest due
on $ 11,589
1989
--
--
$ 514
--
*202 After concessions, the issues for decision are: (1) Whether petitioners are entitled to claimed Schedule C deductions in excess of the respective amounts allowed by respondent for each of the years in issue; (2) whether petitioners are entitled to claimed deductions for rental expenses and rental depreciation in excess of the respective amounts allowed by respondent for each of the years in issue; (3) whether petitioners are entitled to investment tax credits for their taxable years 1987, 1988, and 1989 in excess of the respective amounts allowed by respondent; (4) whether for taxable year 1987 petitioners must report capital gain from the sale of real property in excess of the amount reported on their return; and (5) whether petitioners are entitled to a partnership loss for taxable year 1987 in excess of the amount allowed by respondent. Some of the facts have been stipulated and they are found accordingly. Petitioners resided in Milwaukee, Wisconsin, at the time their petition was filed. Petitioners filed their Federal income tax returns for the years in issue as follows: Taxable Year
Date Return Was Filed
1986
May 23, 1990
1987
May 4, 1990
1988
May 4, 1990
1989
May 7, 1990
*203 Petitioners filed an amended 1989 Federal income tax return on June 19, 1990. During the years in issue petitioner Jerry Hall (Mr. Hall) owned and operated a Schedule C accounting business known as Hall's Accounting & Tax, and together with petitioner Edna Hall, owned, rented, and managed several real estate properties in Milwaukee. Also during the years in issue, petitioners received interest income, unemployment compensation, and wages for accounting services Mr. Hall performed for a temporary help agency. Petitioners bear the burden of proving their entitlement to their claimed deductions, partnership loss, business credits, and property basis and selling expenses. Rule 142(a); see New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111 (1933). I. Petitioners' Schedule C Expenses
After concessions by the parties, the remaining Schedule C issues for each of the taxable years in issue are the deductible amount of Mr. Hall's claimed auto and truck expenses, and whether he is entitled to deductions related to a home office. For petitioners' taxable years 1986 through 1989, *204 Mr. Hall claimed deductions for automobile and truck expenses in the respective amounts of $ 1,050, $ 765, $ 660, and $ 275. For each of these years, respondent disallowed the entire deduction on the ground that Mr. Hall failed to substantiate any business use, as required by section 274(d). Based on the record in this case, we agree with respondent. Mr. Hall's assertion of business use of his vehicles is based only on his self-serving testimony and not, as required by section 274(d), by adequate records or other evidence corroborating the testimony. Accordingly, we hold that respondent's determinations on this issue are sustained for each of the years in issue, and conclude that Mr. Hall is not entitled to deduct any amount of his claimed auto and truck expenses for taxable years 1986 through 1989. We next address Mr. Hall's claimed home office expense deductions. For taxable year 1986, the issue is whether petitioners are entitled to claimed deductions for depreciation, mortgage interest, and property taxes. The identical type of deductions are in dispute for each of the taxable years 1987 through 1989, as well as claimed deductions for utilities. Petitioners contend that *205 they maintained an office in the home during each of the years in issue. Respondent concedes that petitioners' residence qualifies as the principal place of business for Hall's Accounting & Tax and for petitioners' rental management business for each of the years in issue, and further concedes that petitioners are entitled to allocable deductions related to a home office if we conclude that a portion of their residence was exclusively used on a regular basis for either of these businesses, as required by section 280A(c)(1)(A). However, based on the record in this case, we conclude that for each of the years in issue petitioners failed to use any portion of their residence exclusively and regularly as working space for either business. In reaching this conclusion, we reject petitioners' claim that 30 percent of their residence was exclusively and regularly used as working office space for Hall's Accounting & Tax and their rental property management business. Petitioners' 30-percent allocation is comprised of 12.5 percent of the attic, 12.5 percent of the basement, and 5 percent of their actual living quarters (consisting of a portion of their undivided dining room). However, Mr. *206 Hall's testimony at trial clearly indicates that each of these areas was used for personal purposes. Petitioners stored personal books and clothing in the attic, stored personal items and used their washer and dryer in the basement, and entertained in the dining room. Further, it is clear that none of the areas petitioner claimed as office space is segregated in use in any fashion from the personal use occurring within those areas. Because we find that petitioners did not exclusively and regularly use any portion of their residence for business purposes during the years in issue, we conclude that they are not entitled to deduct any amount of their claimed home office expenses for any of the years in issue. II. Petitioners' Rental Activity
We next address the issues arising from petitioners' rental activity. For each of the taxable years in issue, petitioners and respondent disagree over the proper amount of depreciation on buildings used in petitioners' rental activity and the proper amount of the property taxes petitioners are entitled to deduct on the rental portion of their personal residence duplex. The parties agree that for each of the years in issue, in order *207 to determine the proper amount of depreciation on the buildings used in petitioners' rental activity, we must determine petitioners' basis in the buildings. For taxable year 1986, petitioners claimed $ 4,135 in depreciation on two buildings used in their rental activity. Respondent disallowed the depreciation deduction in full due to lack of substantiation. Petitioners claimed $ 1,186 in depreciation on a building located at 3122-24 N. 28th Street, Milwaukee, Wisconsin (Property A), and $ 2,949 in depreciation on a building located at 2732-34 N. 4th Street, Milwaukee, Wisconsin (Property B). Property A is a duplex consisting of two units equal in size, one which petitioners use as their residence and the other which they rent. The parties agree that petitioners are entitled to claim as a deduction 50 percent of the proper amount of depreciation on Property A. The parties further agree that 88 percent of petitioners' basis in Property A should be allocated to the duplex itself and 12 percent of the basis should be allocated to the land. The parties also agree that petitioners' basis in Property A should be determined from figures shown on petitioners' purchase settlement statement *208 which was received in evidence at trial. The settlement statement shows that petitioners purchased Property A in 1983 for a contract sales price of $ 31,000, and also paid a total of $ 52 in acquisition costs. The settlement statement shows no other amounts which properly should be added to basis. Based on this information, we conclude that petitioners' basis in Property A equals $ 31,052. Based on the stipulations between the parties, we further conclude that petitioners' basis in the duplex is $ 27,325.76. We hold that petitioners' depreciation deduction for Property A for taxable year 1986 must be redetermined in accordance with this Memorandum Opinion under Rule 155. Property B is rental property petitioners acquired from Ms. Patricia Bohne during taxable year 1985. Petitioners acquired Property B in two stages. First, we find that petitioners received a 30-percent interest in Property B in exchange for Mr. Hall's agreement to assist Ms. Bohne in settling her deceased mother's estate. Second, it is uncontested that petitioners acquired Ms. Bohne's remaining 70-percent interest in Property B for $ 18,000. In concluding that petitioners received their 30-percent interest *209 in Property B in exchange for the performance of services, we reject their argument that they received the interest as a gift. Besides Mr. Hall's self-serving testimony, which was vague and uncorroborated and provided no insight into petitioners' relationship with Ms. Bohne beyond their agreement to exchange property for services, there is no evidence in the record that the 30-percent interest was received as a token of Ms. Bohne's detached, disinterested generosity. See Commissioner v. Duberstein, 363 U.S. 278 (1960). Accordingly, we conclude that petitioners' 30-percent interest in Property B was received as a quid pro quo for the performance of services.[1] Petitioners contend that at the time they received their 30-percent interest in Property B, the fair market value of the entire property was $ 26,900, of which $ 2,440 was attributable to the land, and $ 24,460 was attributable to the building. Respondent does not challenge these contentions. *210 Based on the unchallenged value of Property B at the time petitioners received their 30-percent interest, we conclude that it was worth $ 8,070 when petitioners acquired it in exchange for Mr. Hall's agreement to perform services for Ms. Bohne's deceased mother's estate. It follows that petitioners acquired their 30-percent interest in Property B with a basis in the amount of $ 8,070. See Philadelphia Park Amusement Co. v. United States, 130 Ct. Cl. 166, 126 F. Supp. 184 (1954). Based on the foregoing, we conclude that petitioners acquired the entire Property B with a basis in the amount of $ 26,070. Because it is uncontested that $ 2,440 of Property B is attributable to the land, we hold that petitioners' basis in Property B for depreciation purposes equals $ 23,630. As with Property A, we conclude that petitioners' depreciation deduction must be redetermined in accordance with this Memorandum Opinion under Rule 155. For taxable year 1987, petitioners claimed $ 5,572 in depreciation on three properties used in their rental property management business. Respondent disallowed the depreciation deduction in full for lack of substantiation. *211 Property A and Property B, discussed previously, were two of the three rental properties used in petitioners' business during 1987. We hold that petitioners' 1987 depreciation deductions related to these properties must be recomputed based on our previous discussion of these properties under Rule 155. The third property (Property C) is located at 3039-3039A N. Palmer Street, Milwaukee, Wisconsin. Property C was acquired by petitioners in 1987 by their agreement to assume an installment loan in the amount of $ 12,500. It is undisputed that $ 2,500 of the acquisition cost is attributable to the land and $ 10,000 is attributable to the building. After acquiring Property C (and also in 1987), petitioners entered into an agreement with a carpenter, whereby the carpenter received a 30-percent interest in Property C in exchange for the performance of restoration services on the property. The carpenter did not assume any amount of the $ 12,500 installment loan, and petitioners remained liable for the entire amount of the loan. The value of Property C increased to $ 25,000 after the carpenter completed his restoration work. On their 1987 return petitioners claimed a $ 25,000 basis *212 in Property C, consisting of the $ 12,500 debt plus the value of the carpenter's labor. Petitioners argue that they are entitled to claim the fair market value of the carpenter's work as a capital expense that increases their $ 12,500 acquisition basis. We disagree with petitioners. Had petitioners' transaction with the carpenter been such that they simply paid him $ 12,500 for the value of his services, we would agree that the restoration expenses should be capitalized and added to petitioners' acquisition basis in Property C. However, this is not the case. Based on the record, we find that petitioners effectively sold to the carpenter a 30-percent interest in Property B in exchange for services rendered. Under this analysis, there is no legal support for adding the fair market value of the carpenter's services to petitioners' basis in the property. Rather, consistent with the treatment accorded sales of property under the Internal Revenue Code, petitioners must recognize gain to the extent that the amount they realized on the transfer of the property interest exceeds their adjusted basis in the property interest. Secs. 61(a)(3), 1001(a). We accordingly proceed to determine *213 whether petitioners must recognize any gain from the effective sale of a 30-percent interest in Property C. It is undisputed that Property C had a fair market value of $ 25,000 upon completion of the carpenter's restoration work. Based on this fact, after giving the carpenter a 30-percent interest in Property C after completion of the work, petitioners transferred property worth $ 7,500, which equals their amount realized. See Philadelphia Park Amusement Co. v. United States, supra. We compute petitioners' adjusted basis in the transferred property by allocating 30-percent of their overall adjusted basis in Property C to the interest transferred. See Sam Goldberger, Inc. v. Commissioner, 88 T.C. 1532, 1560 (1987); Inaja Land Co. v. Commissioner, 9 T.C. 727, 735 (1947); sec. 1.61-6(a), Income Tax Regs. In this case, because the record does not indicate that petitioners incurred any expenses related to the acquisition or improvement of Property C other than their assumption of the $ 12,500 installment loan, we find that petitioners' basis in Property C equals $ 12,500. *214 Accordingly, we conclude that petitioners' basis in the transferred interest equals $ 3,750. It follows that by transferring a 30-percent interest in Property C to the carpenter in exchange for services rendered, petitioners realized a capital gain in the amount of $ 3,750, which must be recognized for taxable year 1987 pursuant to section 1001(c). In reaching our conclusion that petitioners effectively sold a 30-percent interest in Property C to the carpenter in exchange for services rendered, we reject their argument that they formed a partnership concerning Property C, of which the carpenter received a 30-percent interest in exchange for his services, and petitioners received a 70-percent interest in exchange for contributing the property. Whether a partnership has been created for tax purposes is primarily a question of whether, based upon the attendant facts and circumstances, the parties intended to, and did, join together for the purpose of conducting some business enterprise. Commissioner v. Culbertson, 337 U.S. 733, 742 (1949); Luna v. Commissioner, 42 T.C. 1067, 1077 (1964). In making this determination, *215 we examine the following factors, none of which is singularly conclusive: (1) The agreement of the parties and their conduct in executing its terms; (2) whether separate books or records of account were maintained for the partnership; (3) whether the business held itself out to the public as a partnership; (4) whether the parties exercised mutual control over and assumed mutual responsibilities for the enterprise; and (5) whether the parties filed Federal partnership returns. Luna v. Commissioner, supra at 1077-1078. Based on the record in this case we conclude that petitioners were not involved in a partnership with the carpenter to operate Property C. Except for petitioners' self-serving testimony, there is no evidence of the existence of a partnership. The record contains no details of a partnership agreement, no evidence that Property C was held out to the public as operated by a partnership, and no evidence of partnership books or records, and no partnership return was ever filed. In fact, petitioners treated Property C as if they owned it entirely as individuals, claiming 100 percent of the depreciation on the property on Form 4562 attached *216 to their individual return. In the aggregate, the facts in this case do not sustain the existence of a partnership. See Luna v. Commissioner, supra; Burleson v. Commissioner, a Memorandum Opinion of this Court dated Aug. 17, 1953. We conclude that petitioners and the carpenter were co-owners of Property C, but not partners, and that petitioners are therefore entitled to deduct 70 percent of the allowable depreciation on the property. Based on the foregoing, it follows that petitioners' basis in their 70-percent interest in Property C equals $ 16,250; $ 1,750 of which is attributable to the land and $ 14,500 of which is attributable to the building. We hold that petitioners' depreciation deduction related to the business use of Property C must be recomputed in accordance with this Memorandum Opinion under Rule 155. For taxable year 1988, petitioners claimed $ 9,798 in depreciation on four properties used in their rental property management business. Property A and Property C, discussed previously, were two of the four rental properties used in petitioners' business during taxable year 1988. We hold that petitioners' 1988 depreciation deductions *217 related to these properties must be recomputed under Rule 155 based on our previous discussion of these properties. The third property used in petitioners' rental management business during 1988 was Property B, which petitioners sold in taxable year 1987 and reacquired during taxable year 1988. Petitioners reacquired Property B at a cost equal to their 1987 sales price, and respondent does not dispute that petitioners are entitled to depreciation deductions on Property B during taxable year 1988 using the reacquisition cost as the overall basis in the property. There also is no dispute as to the allocation of the basis of reacquired Property B between land and building, and therefore, the allocation discussed previously in this Memorandum Opinion is determinative, and $ 2,440 of the basis of reacquired Property B is attributable to the land. We hold that petitioners' depreciation deduction for the reacquired Property B must be recomputed in accordance with this Memorandum Opinion under Rule 155. The fourth property (Property D) is located at 2466A-2470A N. 24th Street, Milwaukee, Wisconsin. Property D was acquired by petitioners in December 1987, at a cost of $ 8,500, of which *218 $ 1,500 was attributable to the land and $ 7,000 was attributable to the building. After acquiring Property D, petitioners entered into an agreement involving the property with the carpenter who worked on Property C. The agreement was identical to the Property C agreement. As a result of the carpenter's restoration work, the value of Property D increased to $ 23,000. Petitioners contend, as they did regarding Property C, that they are entitled to a $ 23,000 basis in Property D, consisting of their $ 8,500 investment plus the value of the carpenter's labor. Further, as with Property C, petitioners argue that they entered into a partnership with the carpenter to operate Property D. Because the substance of petitioners' agreement with the carpenter regarding Property D is identical to the substance of the Property C agreement, we conclude that our prior analysis applies. Accordingly, we hold that petitioners effectively sold a 30-percent interest in Property D to the carpenter in exchange for his restoration services, and we proceed to determine the amount of gain, if any, petitioners realized and must recognize from the sale. It is undisputed that Property D had a fair market *219 value of $ 23,000 upon completion of the carpenter's restoration work. Based on this fact, we conclude that upon giving the carpenter a 30-percent interest in Property D after completion of the work, petitioners transferred property worth $ 6,900, which equals their amount realized. See Philadelphia Park Amusement Co. v. United States, 130 Ct. Cl. 166, 126 F. Supp. 184 (1954). We compute petitioners' adjusted basis in the transferred property by allocating 30 percent of their overall adjusted basis in Property D to the interest transferred. See Sam Goldberger, Inc. v. Commissioner, 88 T.C. 1532, 1560 (1987); Inaja Land Co. v. Commissioner, 9 T.C. 727, 735 (1947); sec. 1.61-6(a), Income Tax Regs. In this case, because the record does not indicate that petitioners incurred any expenses related to the acquisition or improvement of Property D other than their initial $ 8,500 installment loan, we conclude that petitioners' basis in Property D equals $ 8,500. Accordingly we hold that petitioners' basis in the transferred interest equals $ 2,550. It follows that by transferring *220 a 30-percent interest in Property D to the carpenter in exchange for services rendered, petitioners realized a capital gain in the amount of $ 4,350, which must be recognized for taxable year 1987 pursuant to section 1001(c). Following our analysis as developed in our previous discussion of the Property C agreement, we conclude that petitioners and the carpenter were co-owners of Property D, but not partners, and that petitioners are therefore entitled to deduct 70 percent of the allowable depreciation on the property. Based on the foregoing, it follows that petitioners' basis in their 70-percent interest in Property D equals $ 12,850, $ 1,050 of which is attributable to the land and $ 11,800 of which is attributable to the building. Accordingly, petitioners' depreciation deduction relating to the business use of Property D must be recomputed in accordance with this Memorandum Opinion under Rule 155. For taxable year 1989, petitioners' claimed depreciation deductions in the sum total of $ 9,565 on Property A, reacquired Property B, Property C, and Property D. Each of these properties has been discussed previously in this Memorandum Opinion. We hold that petitioners' 1989 depreciation *221 deductions related to these properties must be recomputed based on our previous discussion of these properties under Rule 155. We next determine the deductible amount of petitioners' property tax expenses. After concessions, the property tax deductions in issue involve the property taxes paid on petitioners' personal residence duplex. For taxable years 1986, 1987, and 1988, petitioners received property tax bills for their duplex (both residential and rental units) totaling the respective amounts of $ 1,252.55, $ 1,146.89, and $ 1,250.87. Petitioners concede that the 1986 property tax bill was paid in taxable year 1987, that the 1987 property tax bill was paid in 1988, and that the 1988 property tax bill was paid in 1989. Respondent allowed one-half of each respective expense as a rental activity deduction in the year it was paid, and disallowed the other half either as an improper home office deduction or on the ground that petitioners were not entitled to itemize their deductions for any of these years. Petitioners contend they are entitled to their property tax deductions in the years to which the property tax bills relate. We disagree. Petitioners are cash basis taxpayers. *222 As such, they must claim each property tax expense as a deduction in the respective taxable year in which the bill was paid. See Lang v. Commissioner, T.C. Memo. 1983-318. Further, because the amounts of the expenses are uncontested, we conclude that if petitioners are entitled to itemize their deductions for the years in which their property tax bills were paid, they are entitled to claim as an itemized deduction one-half of the respective paid expense. III. Investment Tax Credit
We next address whether petitioners are entitled to claimed investment tax credits under section 38 for property used in their rental management activity during the years in issue. Petitioners claimed investment tax credits on their returns for taxable years 1987, 1988, and 1989 in the respective amounts of $ 1,301, $ 581, and $ 1,324. The credits were claimed based on petitioners' purchase of real property rental units used in their business. Respondent disallowed each of the claimed credits in its entirety on the ground that rental buildings do not qualify for investment tax credits. We agree with respondent. We have previously examined this precise issue *223 in a case where the pertinent facts were substantially identical to the instant case. See Binns v. Commissioner, T.C. Memo. 1988-362. In Binnis we concluded that section 48(a)(1)(B) specifically precludes a taxpayer from claiming an investment tax credit on a building used in a rental property business. Petitioners' claimed investment tax credits in the instant case fall squarely within the purview of our conclusion developed in Binns, and will be accorded the same treatment. IV. Capital Gain
During taxable year 1987 petitioners sold Property B for $ 33,000. Petitioners reported the sale on the Form 4797 attached to their 1987 return. On the Form 4797 petitioners reported $ 6,836 in allowed or allowable depreciation on Property B, and claimed selling expenses and basis in the sum total of $ 34,428. Based on these figures petitioners showed on the Form 4797 a gain realized from the sale of Property B in the amount of $ 5,408. However, on line 15 of their Form 1040 petitioners claimed a 60-percent capital gain deduction pursuant to section 1202, and reported a capital gain from the sale of Property B in the amount of $ 2,163. In *224 the notice of deficiency respondent determined that petitioners failed to adequately substantiate both their basis in Property B and their claimed selling expenses, and that petitioners realized a gain from the sale of Property B in the full amount of the sales price, $ 33,000. Further, respondent determined that the entire gain realized must be recognized, finding section 1202 inapplicable for taxable year 1987. Respondent now concedes that petitioners are entitled to claim $ 2,369.65 in selling expenses, and based on the record, we conclude that this amount is the sum total of allowable selling expenses. Petitioners, who bear the burden of proving their entitlement to claim selling expenses in excess of this amount, have not produced any evidence of additional amounts paid that constitute selling expenses. In reaching this conclusion we reject petitioners' argument that they are entitled to deduct the $ 17,574 they spent to pay off their mortgage on Property B. Petitioners received the benefit of their mortgage in their basis, and the repayment of the loan is not a selling expense. We conclude that petitioners are only entitled to claim selling expenses in the amount conceded *225 by respondent. Based on our prior conclusions in this Memorandum Opinion and the record in this case, it is clear that both petitioners and respondent are in error in their computations of the amount of capital gain petitioners must report from the sale of Property B. We conclude that the proper amount of capital gain petitioners must report on their 1987 return from the sale of Property B must be computed in accordance with this Memorandum Opinion under Rule 155. In computing the amount of capital gain to be reported, petitioners are not entitled to deduct 60 percent of their capital gain realized under section 1202. Section 1202, which formerly permitted a deduction equal to 60 percent of a taxpayer's net capital gain, was repealed for taxable years beginning after December 31, 1986. Tax Reform Act of 1986, Pub. L. 99-514, sec. 301(a), (c), 100 Stat. 2216, 2218. V. Partnership Loss
Finally, we address whether petitioners are entitled to the partnership loss claimed on their 1987 return. On their 1987 return petitioners claimed a partnership loss in the amount of $ 2,226 related to their Property D partnership. Petitioners contend that the loss is comprised of depreciation *226 and certain rental activity expenses. In the notice of deficiency respondent disallowed the claimed partnership loss in its entirety for lack of substantiation. Previously we concluded that petitioners did not enter into a partnership regarding Property D. Based on our prior conclusion, we hold that petitioners are not entitled to a deduction in any amount for a partnership loss for taxable year 1987. However, it is uncontested that petitioners are entitled to depreciation deductions for taxable year 1987 relating to business use of the property in December (discussed previously in this Memorandum Opinion) and that the property generated $ 275 in rental income for that month. We conclude that these figures must be taken into account in determining petitioners' rental activity income relating to Property D in taxable year 1987. However, we also conclude that petitioners are not entitled to deduct their claimed $ 1,600 in rental activity expenses. Petitioners placed no evidence into the record to substantiate the $ 1,600 expense deduction except for Mr. Hall's self-serving testimony, which we find insufficient to satisfy his burden of proof on this issue. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). *227 Based on the foregoing, Decision will be entered under Rule 155. Footnotes
1. Petitioners' taxable year 1985 is not before the Court. Accordingly, we do not address the income issue attendant upon petitioners' receipt of property in exchange for services.↩